## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA JENNINGS, | ) | CASE NO. |
| 2096 Alabama Drive | ) | |
| Xenia, Ohio 45385 | ) | JUDGE: |
|              Plaintiff, | ) | |
| | ) | |
|     v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| YAMADA NORTH AMERICA, INC. | ) | |
| 9000 Columbus Cincinnati Road | ) | **JURY DEMAND ENDORSED** |
| South Charleston, Ohio 45368 | ) | **HEREIN** |
| | ) | |
| **Serve also:** | ) | |
| ACME AGENT, INC. | ) | |
| Statutory Agent | ) | |
| 41 South High Street, Suite 2800 | ) | |
| Columbus, Ohio 43215 | ) | |
| | ) | |
|              Defendant. | ) | |
| | ) | |

Plaintiff, Brenda Jennings, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

### PARTIES AND VENUE

1. Jennings is a resident of the city of Xenia, county of Greene, state of Ohio.

2. Yamada North America, Inc. is a domestic corporation with a principal place of business located at 9000 Columbus Cincinnati Road, South Charleston, Ohio 45368.

3. The conduct giving rise to the allegations in this Complaint occurred in Ohio.

4. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. 2307.382(A)(1), (3), and (4).

5. Venue is proper pursuant to 28 U.S.C. § 1391(c)(2).



6. Within 300 days of the conduct alleged below, Jennings filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") as Charge No. 532-2021-01494.

7. On August 5, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Jennings regarding the Charges of Discrimination brought by Jennings against Yamada in EEOC Agency Charge No. 532-2021-01494.

8. Jennings received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

9. Jennings has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

10. Jennings has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

11. Jennings' claims arise under federal law, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.*

12. This Court has subject matter jurisdiction over Jennings' claims under 28 U.S.C. § 1331.

## FACTS

13. Jennings is a former employee of Yamada.

14. At all relevant times, Yamada was a covered employer under the FMLA.

15. Jennings began working for Yamada on or around February 19, 2019.

16. Jennings worked for Yamada as a Quality Inspector.

17. Jennings is a Jehovah's Witness.

18. Because of Jennings' religious beliefs, Jennings is forbidden from working on Sundays. ("Religious Practices")

The Employee's Attorney.™


19. Jennings' Religious Practices are the result of her sincerely held religious beliefs.

20. Yamada was aware of Jennings' Religious Practices throughout Jennings' entire employment.

21. Yamada accommodated Jennings' Religious Practices from February 2019 through mid-May of 2020 by scheduling Jennings to work shifts that were not on Sundays. ("Religious Accommodations")

22. By providing Jennings Religious Accommodations from February 2019 through mid-May 2020, Yamada demonstrated that Jennings' Religious Accommodations posed no undue burden on Yamada.

23. In or around late-May or early-June 2020, Jennings began suffering health-related issues. ("Health Problems")

24. Because of Jennings' Health Problems, Jennings sought medical attention.

25. Because of Jennings' Health Problems, Jennings was eligible for leave under the FMLA.

26. Jennings was at all relevant times herein a qualified employee under the FMLA.

27. Because of Jennings' Health Problems, Jennings sought and received intermittent leave under the Family and Medical Leave Act. ("Intermittent FMLA Leave")

28. When Jennings first applied for Intermittent FMLA Leave, on or about June 15, 2020, a representative from Yamada's Human Resources department, Courtney Last Name Unknown ("LNU"), contacted Jennings' doctor to ask about Jennings' Health Problems. ("Calling Jennings' Doctor")

29. Courtney LNU's Callings Jennings' Doctor was meant to interfere with and/or retaliate against Jennings for seeking Intermittent FMLA Leave.



30. On or about June 15, 2020, upon learning of Courtney LNU's Callings Jennings' Doctor, Jennings reported Courtney LNU to Jackie Bohn. ("June 15, 2020 HR Complaint")

31. Bohn was at all relevant times herein the Director of Human Resources at Yamada.

32. In making the June 15, 2020 HR Complaint, Jennings was reporting a Yamada employee for invading Jennings' privacy rights.

33. Based on Yamada's policies, the June 15, 2020 HR Complaint was considered a significant workplace event.

34. Yamada has a policy of investigating significant workplace events.

35. An investigation should include interviewing the complainant.

36. An investigation should include interviewing the subject of the complaint.

37. An investigation should include interviewing the subject of the reported discrimination.

38. An investigation should include interviewing witnesses to the reported discrimination.

39. An investigation should include getting a written statement from the complainant.

40. An investigation should include getting a written statement from the subject of the complaint.

41. An investigation should include getting a written statement from the subject of the reported discrimination.

42. In response to the June 15, 2020 HR Complaint, Yamada did not interview Jennings.

43. In response to the June 15, 2020 HR Complaint, Yamada did not interview Courtney LNU.

44. In response to the June 15, 2020 HR Complaint, Yamada did not interview any witnesses.

45. In response to the June 15, 2020 HR Complaint, Yamada did not get a written statement from Jennings.

46. In response to the June 15, 2020 HR Complaint, Yamada did not get a written statement from Courtney LNU.



The Employee's Attorney.™

47. In response to the June 15, 2020 HR Complaint, Yamada did not get a written statement from any witnesses.

48. In response to the June 15, 2020 HR Complaint, Yamada conducted no investigation whatsoever.

49. By failing to investigate the June 15, 2020 HR Complaint, Yamada ratified Courtney LNU's conduct.

50. By failing to investigate the June 15, 2020 HR Complaint, Yamada allowed retaliatory conduct to continue.

51. Failing to investigate a report of retaliation is an adverse action.

52. Failing to investigate a report of retaliation is an adverse employment action.

53. Yamada willfully failed to investigate the June 15, 2020 HR Complaint.

54. Yamada intentionally failed to investigate the June 15, 2020 HR Complaint.

55. Following Jennings' June 15, 2020 HR Complaint, Bohn scheduled Jennings to work on Sunday, June 28, 2020. ("Scheduling Jennings to Work on Sunday")

56. Bohn's Scheduling Jennings to Work on Sunday was done because of Jennings' Religious Practices.

57. Bohn's Scheduling Jennings to Work on Sunday was done because of use of Intermittent FMLA Leave.

58. Bohn's Scheduling Jennings to Work on Sunday, was done in retaliation for Jennings' June 15, 2020 HR Complaint.

59. In Scheduling Jennings to Work on Sunday, Bohn treated Jennings less favorably than similarly situated employees based on Jennings' religion.

The Employee's Attorney.™ 

60. In Scheduling Jennings to Work on Sunday, Bohn made it less likely for a reasonable employee to utilize leave under the FMLA.

61. Scheduling Jennings to Work on Sunday was an adverse action.

62. Scheduling Jennings to Work on Sunday was an adverse employment action.

63. Scheduling Jennings to Work on Sunday constitutes discrimination on the basis of religion.

64. Scheduling Jennings to Work on Sunday constitutes retaliation in violation of the FMLA.

65. Scheduling Jennings to Work on Sunday was willful.

66. Scheduling Jennings to Work on Sunday was intentional.

67. Because of Jennings' Religious Practices, Jennings did not work on Sunday June 28, 2020.

68. Yamada has an attendance policy under which it assesses attendance points against employees who are late to and/or absent from work. ("Attendance Policy")

69. Under Yamada's Attendance Policy, an employee would not be assessed attendance points for an absence related to a legitimate religious belief if that employee provides sufficient notice of his or her planned absence.

70. Alternatively, Yamada's Attendance Policy does not permit employees to schedule off of work in observation of their faith.

71. Yamada was aware that Jennings would not work on Sunday, June 28, 2020 because it had previously granted her the Religious Accommodations.

72. In or around early July 2020, Bohn issued Jennings attendance points for failing to work on Sunday June 28, 2020. ("First Issuance of Attendance Points")

73. The First Issuance of Attendance Points was done because of Jennings' Religious Practices.

74. The First Issuance of Attendance Points was done because of the June 15, 2020 HR Complaint.



75. The First Issuance of Attendance Points was done because Jennings received Intermittent FMLA Leave.

76. Because of the First Issuance of Attendance Points, Yamada treated Jennings less favorably than similarly situated, non-Jehovah's Witness employees.

77. The First Issuance of Attendance Points made it less likely for a reasonable, qualified employee to take leave under the FMLA.

78. The First Issuance of Attendance Points made it less likely for a reasonable employee to make a protected complaint to human resources.

79. Issuing attendance points against an employee is an adverse action.

80. Issuing attendance points against an employee is an adverse employment action.

81. The First Issuance of Attendance Points constitutes discrimination on the basis of religion.

82. The First Issuance of Attendance Points constitutes retaliation in violation of the FMLA.

83. The First Issuance of Attendance Points constitutes the denial of a reasonable religious accommodation.

84. Following the First Issuance of Attendance Points, on or about July 12, 2020, Jennings reported the First Issuance of Attendance Points to Luanne Schaffer. ("July 12, 2020 Discrimination Complaint")

85. Schaffer was at all relevant times herein an individual supervisor and/or manager at Yamada who acted in the interest of Yamada.

86. During the July 12, 2020 Discrimination Complaint, Jennings told Schaffer that Bohn issued attendance points against Jennings even though Bohn was aware of Jennings' Religious Practices.



87. In making the July 12, 2020 Discrimination Complaint, Jennings was opposing discrimination on the basis of religion.

88. Based on Yamada's policies, the July 12, 2020 Discrimination Complaint was considered a significant workplace event.

89. In response to the July 12, 2020 Discrimination Complaint, Yamada conducted an informal investigation that revealed that Bohn willfully issued attendance points against Jennings despite knowing that Jennings' absence was due to her Religious Practices. ("Admission of Discrimination")

90. Alternatively, Yamada conducted no investigation into Jennings' July 12, 2020 Discrimination Complaint.

91. Yamada has a policy against workplace discrimination and harassment. ("Discrimination Policy")

92. Alternatively, Yamada has no Discrimination Policy.

93. It is a violation of Yamada's Discrimination Policy to deny an employee a reasonable religious accommodation.

94. It is a violation of Yamada's Discrimination Policy to take adverse actions against an employee because of her religion and religious practices.

95. Based on Bohn's Admission of Discrimination, Bohn was in violation of Yamada's Discrimination Policy.

96. Yamada has a progressive discipline policy that calls for escalating levels of discipline for disciplinary infractions, beginning with a verbal warning, followed by a written warning, and ultimately leading up to termination.

97. Bohn did not receive a verbal warning.



98. Bohn did not receive a written warning.

99. Bohn did not receive a second written warning.

100. Yamada did not discipline Bohn whatsoever.

101. Skipping steps in a progressive discipline policy is an adverse action.

102. Skipping steps in a progressive discipline policy is an adverse employment action.

103. Rather than discipline Bohn, Yamada removed the attendance points from Jennings' record, while still allowing Bohn to assess attendance points against Jennings. ("Removal of Attendance Points")

104. On or about July 25, 2020, Jennings noticed that, despite the Removal of Attendance Points, Jennings still had attendance points on her record. ("Second Issuance of Attendance Points")

105. Upon noticing the Second Issuance of Attendance Points, Jennings realized that she was assessed attendance points equivalent to those supposedly removed during the Removal of Attendance Points.

106. The Second Issuance of Attendance Points was done by Bohn.

107. Bohn's Second Issuance of Attendance Points included Bohn's issuing attendance points against Jennings during days on which Jennings used her Intermittent FMLA Leave.

108. The Second Issuance of Attendance Points was because of Jennings' June 15, 2020 HR Complaint.

109. The Second Issuance of Attendance Points was because of Jennings' July 12, 2020 Discrimination Complaint.

110. The Second Issuance of Attendance Points was done because of Jennings' taking Intermittent FMLA Leave.



111. In performing the Second Issuance of Attendance Points, Yamada made it less likely for a reasonable employee to make protected complaints of discrimination.

112. The Second Issuance of Attendance Points made it less likely for a reasonable qualified employee to take leave under the FMLA.

113. Yamada did not issue attendance points against similarly situated, non-Jehovah's Witness employees who used FMLA leave.

114. By performing the Second Issuance of Attendance Points, Yamada treated Jennings less favorably than similarly situated non-Jehovah's Witness employees.

115. The Second Issuance of Attendance Points was pretext to deny Jennings her reasonable Religious Accommodations.

116. The Second Issuance of Attendance Points was an adverse action.

117. The Second Issuance of Attendance Points was an adverse employment action.

118. The Second Issuance of Attendance Points constitutes discrimination on the basis of religion.

119. The Second Issuance of Attendance Points constitutes retaliation for Jennings' opposition to Yamada's discrimination on the basis of religion.

120. The Second Issuance of Attendance Points constitutes retaliation in violation of the FMLA.

121. The Second Issuance of Attendance Points effectively deprived Jennings from utilizing her Intermittent FMLA Leave.

122. The Second Issuance of Attendance Points was willful.

123. The Second Issuance of Attendance Points was intentional.

124. On or about July 30, 2020, Jennings realized that she would continue receiving attendance points because of her Religious Practices and protected actions, including using the FMLA.

The Employee's Attorney.™ 

125. Based on Jennings' repeated failed attempts to oppose the discrimination and retaliation she was facing, the work environment became so hostile that no reasonable employee could be expected to endure it.

126. On or about July 30, 2020, Jennings was constructively discharged from Yamada.

127. As a direct and proximate result of Defendant's conduct, Jennings suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT I: RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII

128. Jennings restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

129. As a Jehovah's Witness, Jennings is a member of a statutorily protected class under 42 U.S.C. §§ 2000 et seq.

130. Throughout her employment, Jennings was treated less favorably than similarly situated non-Jehovah's Witness employees because of her religion.

131. Jennings was denied a reasonable religious accommodation when Yamada issued attendance points against her for being unable to work on Sundays due to her Religious Practices.

132. 42 U.S.C. § 2000e-2 makes it unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

133. Yamada's actions amount to discrimination on the basis of religion in violation of 42 U.S.C. § 2000e-2.

134. As a result of Yamada's discrimination against Jennings in violation of 42 U.S.C. § 2000e-2, Jennings has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Jennings to injunctive, equitable, and compensatory monetary relief.

135. As a result of Yamada's discrimination against Jennings in violation of 42 U.S.C. § 2000e-2, Jennings has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain suffering.

136. In its discriminatory actions as alleged above, Yamada acted with malice or reckless indifference to the rights of Jennings, thereby entitling Jennings to an award of punitive damages.

137. To remedy the violations of the rights of Jennings secured by 42 U.S.C. § 2000e-2, Jennings requests that the Court award her the relief demanded below.

**COUNT II: RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e-3**

138. Jennings restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

139. As a Jehovah's Witness, Jennings is a member of a statutorily protected class under 42 U.S.C. §§ 2000 et seq.

140. Throughout her employment, Jennings was treated less favorably than similarly situated non-Jehovah's Witness employees because of her religion.

141. As a result of the discriminatory conduct described above, Jennings reported the discrimination that she was experiencing.

142. In reporting the discrimination she experienced, Jennings was opposing unlawful discrimination on the basis of race.

143. In response to Jennings' protected complaints of discrimination, Yamada took adverse actions and adverse employment actions by issuing further discipline and attendance points against Jennings.



144. 42 U.S.C. § 2000e-3(a) makes it an unlawful discriminatory practice to "discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

145. Yamada's actions amount to unlawful retaliation in violation of 42 U.S.C. § 2000e-3(a).

146. As a result of Yamada's discrimination against Jennings in violation of 42 U.S.C. § 2000e-3, Jennings has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Jennings to injunctive, equitable, and compensatory monetary relief.

147. As a result of Yamada's discrimination against Jennings in violation of 42 U.S.C. § 2000e-3, Jennings has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain suffering.

148. In its discriminatory actions as alleged above, Yamada acted with malice or reckless indifference to the rights of Jennings, thereby entitling Jennings to an award of punitive damages.

149. To remedy the violations of the rights of Jennings secured by 42 U.S.C. § 2000e-3, Jennings requests that the Court award her the relief demanded below.

### COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

150. Jennings restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

151. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

152. Yamada is a covered employer under the FMLA.



153. During her employment, Jennings qualified for and received FMLA leave.

154. Rather than permit Jennings to use her Intermittent FMLA Leave, Yamada issued attendance points against Jennings when she was absent on days on which she used her Intermittent FMLA Leave.

155. Yamada unlawfully interfered with Jennings's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

156. As a direct and proximate result of Yamada's conduct, Jennings is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

### COUNT IV: RETALIATION IN VIOLATION OF THE FMLA

157. Jennings restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

158. Yamada is a covered employer under the FMLA.

159. During her employment, Jennings qualified for and received FMLA leave.

160. Upon qualifying for and receiving FMLA leave, Jennings was retaliated against by being issued attendance points and scheduled to work on her religious day of observance.

161. Yamada willfully retaliated against Jennings in violation of 29 U.S.C. § 2615(a).

162. As a direct and proximate result of Yamada's wrongful conduct, Jennings is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

### DEMAND FOR RELIEF

WHEREFORE, Jennings demands from Yamada the following:



(a) Issue an order requiring Yamada to restore Jennings to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Yamada of compensatory and monetary damages to compensate Jennings for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Yamada in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Jennings claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

    Respectfully submitted,

    Brian D. Spitz (0068816)
    **THE SPITZ LAW FIRM, LLC**
    25825 Science Park Drive, Suite 200
    Beachwood, OH 44122
    Phone: (216) 291-4744
    Fax:   (216) 291-5744
    Email:  brian.spitz@spitzlawfirm.com

    *Attorneys For Plaintiff Brenda Jennings*

## JURY DEMAND

Plaintiff Brenda Jennings demands a trial by jury by the maximum number of jurors permitted.

    Brian D. Spitz (0068816)

    *Attorney For Plaintiff Brenda Jennings*

The Employee's Attorney.™

